ANDERSON. J.
The plaintiffs in one of the counts in the declaration claim the land in controversy in the name of Dale Carter's heirs. In another count they claim it in the name of James Campbell, and in !|!another count they claim it in the names of Carter and Campbell jointly. If they have shown good title in either they are entitled to recover.
We will consider the title of James Campbell. He is invested with whatever title was held by Erancis De Tubeuf of the elder; provided Francis and Alexander De Tu-beuf, who claimed by inheritance from him, were his sons and heirs; for whatever title they had is traced by regular conveyance from them through various successions which it is unnecessary to detail, to the said James Campbell. That they were his sons and heirs, we think is well established by reputation.
De Tubeuf, the elder, claimed to hold ten thousand acres of land, by a conveyance from Richard Smith, who held it under a grant from the Commonwealth.
The plaintiffs, as we have seen, having traced their title to the land in controversy, which is 4,900 acres, part of the aforesaid tract of 10,000 acres, to De Tubeuf the elder, in order to trace his title back to the Commonwealth, offered in evidence attested copies of the following papers;
No. 1. A deed from Richard Smith for the said 10,000 acre tract, bearing date November 8, 1792, purporting to have been executed and acknowledged for him and in his name by Charles Higbee, his substituted attorne".
2. A power of attorney from Abram Lott and Joseph Higbee, bearing date October 11, 1792, with a certificate of acknowledgment by a notary public of Pennsylvania, residir - in Philadelphia, whose official character and duly executed certificate of acknowledgment is certified by two notaries public of Philadelphia; and,
3. A power of attorney from Richard Smith, the patentee of the 10,000 acres, to the said Lott and Joseph Higbee, giving them full power and authority *jointly or severally in his name, and Hr him, to grant, convey, or sell and change with the said De Tubeuf all his right, title and property in or to a certain tract or parcel of land of 10,000 acres, situate in Russell county in the state of Virginia granted to him by the commonwealth of Virginia by patent bearing date the 14th of March, 1788, (No. 16,) and which patent, he says, is hereunto annexed; and in his name and for him, to sign, seal, to execute and deliver any deed or other assurance for effectually transferring and assuring to the said De Tubeuf, his heirs, &c., all his right, title, and interest as aforesaid, with power also to appoint or substitute an attorney or attorneys un *492 der them for the purposes aforesaid, &c.; which power is attested' by two witnesses, and by a notary public who testifies, in effect, that he was present and saw the' said Richard Smith sign, seal, and ’ deliver the said power of attorney in the presence of the two witnesses, and that the names of the said Richard Smith and of the two witnesses who hath subscribed as witnesses are in their proper handwriting respectively.
These papers, with the certificates annexed to them, were ordered by the general court, at a court held at the capital, in the city of Richmond, on the 10th day of November, 1792, to be recorded, together with the patent; and attested copies from the record were offered by the plaintiffs in evidence. To which the defendants objected.
The admission of a deed to record, it has been held by this court, is a ministerial act, though done in open court; and if not in conformity to law the recordation is void, and a certified copy of the deed is inadmissible as evidence. We can find' ño statute which was in force when the foregoing writings were admitted to record by the general court which authorized the recording of a power of attorney upon an acknowledgment *before a notary public as the substituted power of attorney to Charles Higbee was acknowledged. It would seem, therefore, that a copy of it was not admissible in evidence. But it may be doubted whether it is not too late after this lapse of time to question the authority of the agent who undertook to convey the land. See 1 Greenlf. Evi.. chap. 4, p. 27.
It is more than probable that De Tubeuf with his two sons, and other relatives emigrated from France to this country not many years after the establishment of its independence, and that he came to Virginia where he had relatives residing, and became an adopted citizen of the State; and that he purchased a tract of ten thousand acres of land upon the Clinch and Guests rivers, in the county of Russell, from Richard Smith, the patentee, upon which he settled, with his two sons, then half grown boys. There is evidence of his having purchased other lands, adjoining the ten thousand acres, amounting in all to 50,000 acres from the same vendor, who was the owner of a vast area of country, in that county, of which the fifty thousand acres were not the one-seventh part.
The said tract of ten thousand acres was granted by the Commonwealth to the said Richard Smith, by patent bearing date the 14th of March, 1788. There can be no doubt, from what appears on the face of this record, that De Tubeuf, the elder, with his two sons, settled upon this tract of land, perhaps as early as 1794, or ’5, under a claim of purchase from the said Smith, which was acknowledged by him years afterwards in solemn form, and that he resided upon it, and exercised ownership over it as long as-he lived; and that he was murdered upon it. His sons, one of whom was then grown, or nearly so, after the murder of their father — how soon does not appear; but perhaps in the course of a year or two — removed to Peters-burg, *Virginia, and entered into business there, in partnership with their relation Thomas Loraine, who. resided in France, and never lived in this country.
'There is no. evidence in this record that any claim of title was ever made to the said tract of land, by any one,' adversely to the heirs of the elder De Tubeuf, or that any one ever took possession of it, or of any part of it, adversely to their claim of title, until entry was made upon it by the defendants, a few years before the institution of this suit. And they do not pretend to have entered under any claim of title.
In fact no question was ever raised as to the title of De Tubeuf the elder, or of his sons by descent from him, so far as this record shows; but they seem to have been regarded and recognized without question as the owners of the land: and as early as the 20th and 23d of August, 1803, only about four years after the death of their father, who is reputed to have been murdered in 1799, they executed to Campbell & Wheeler, separate deeds of mortgage, each conveying his undivided moiety — Francis De Tubeuf. by his deed of all the lands in Virginia which descended to them from their father, and Alexander A. De Tubeuf, of all the lands situate in the county of Russell whereof his father died seized in fee simple, or to which he was entitled, to secure a large debt which was due them from their firm, and which doubtless, was contracted while they were doing business in the. city of Petersburg. Alexander had previously returned to France, and executed his said deed in that country, which, with his acknowledgment, properly certified by the Maire of Alias and authenticated, was recorded in the office of the general court of this State; where the deed of his brother Francis, was also recorded, by order of said general court, upon a proper certificate of acknowledgment. After which the said Francis *also returned to France, where they both lived until death.
There had been no abandonment of the land by the De Tubeufs, or surrender by them of the possession to any one, when they left it, and afterwards engaged in business in Petersburg. There was no one in possession, or claiming the right of possession adversely to them, to whom they could have surrendered; and the execution of these deeds was an assertion of their possession and title entered of record. In fact they and those who claim under them, have never been out of possession. They have never been ousted of the actual possession; and no one has ever held possession of any part of the land adversely to them, until the entry by the defendants on part of the land, a few years before the institution of this suit; and that entry it seems, was not under a claim or color of title. It is certified by the judge who tried this cause, that “the defendants on their part proved that some of the land withheld by them had long been cleared and used; other portions only for a short time; that some of the defendants had been in posses- *493 sionforsixyears; some since 1863; and others not so long. And the defendants then offered, as their own evidence, the grant to Richard Smith No. 16, for 10,000 acres of land, which is hereinbefore set out in the plaintiffs’ evidence. And this was all the evidence introduced or offered by the defendants.” It is not shown that the lands which had been cleared and used a long time had ever been occupied adversely to the plaintiffs’ claim of title, or that they had not been cleared and used by some of those under whom the plaintiffs claim. They might have been cleared and used by De Tubeuf himself, or his servants, or by the agents or servants of Campbell & Wheeler, both of whom, as well in all probability as the persons by whom the work was done, are dead and *could not testify in this cause. The defendants show no possession in themselves, or either of them, even if it were under a claim or color of title, which could bar the recovery' of the plaintiffs. They gave in evidence the patent of Richard Smith, under which the plaintiffs claim, but do not offer a particle of evidence to connect themselves with it.
The plaintiffs in contemplation of law, have been in the actual uninterrupted possession since the settlement on it by De Tubeuf the cider, under a claim of title, about eighty-five 3'ears ago, until the defendants entered upon it; and during that period their title has been recognized in two or three protracted suits, and the land has been twice sold, under decrees of different courts, once by a decree of the superior court of chancery for the Wythe district, and at another time by the circuit court of Norfolk city, consistently with, and in recognition of the title under which the plaintiffs claim. The first sale was publicly made bv the marshal of the court, on the 3d of July, 1832, before the front door of the courthouse of Russell county, after the sale had been advertised for six weeks in a public newspaper published in Abingdon, and posted for the same length of time at the front door of the courthouse in the said county of Russell, where the lands lay, which sale was confirmed by a decree of the said superior court of chancery, and a deed ordered to be made to the purchaser by said court.
The second sale was made by John Bickley, of Russell county, as a special commissioner appointed for the purpose, by the circuit court of Norfolk city, on the 3d day of June, 1856, bv virtue of a decree of said court, before the front door of the .courthouse of Russell county, after having given thirty days’ public notice of said sale by advertisement in newspapers and by posting the notice at the front door of the courthouse, *at which sale James Campbell aforesaid, became the purchaser; which sale was confirmed by said court, and a deed made to the said Campbell by Bickley the commissioner, pursuant to its decree. This sale and conveyance was not in conflict with the title which vested under the previous sale, and the decree in confirmation thereof, but in recognition of the same, and in fact the title which vested in the purchaser, was the title of De Tubeuf the elder, derived through the hereinbefore mentioned deeds of his sons, and the sale made under a decree of the superior court of chancery aforesaid, and the confirmation thereof by a subsequent decree which directed the marshal to convey the title to the purchaser; which conveyance was not made in consequence of the death of the marshal; and was made .to James Campbell, who had acquired the rights of the purchaser at the first sale, by a commissioner appointed by a decree of the circuit court of Wythe county, specially appointed for the purpose, to which court the papers and cause had been transferred on the abolition of the district court.
In all these proceedings in court, and out of court, continuing during aperiod of thirty-five years, from 1831, the title of De Tubeuf the elder, to the ten thousand acres of land, four thousand nine hundred acres of which is claimed in this suit; under his title, is not only publicly recognized and asserted, but enforced; and yet in that long lapse of thirty-five years, during which period these suits were being prosecuted, although such publicity had been given to the proceedings, not one person has ever come forward to dispute that title, or to claim title in himself, or to interfere with the control and disposal of the land by the plaintiffs and those under whom they claim or to interrupt their possession. We have here a continual claim of title, recognized by the courts, and continuously *asserted in the face of the world, and undisturbed possession for eighty-five years, except by the defendants in his suit by their recent acts. And they set up no title in themseWes, but rest upon an outstanding title in Richard Smith, adverse to and paramount to the title of the plaintiffs, with which they do not profess to connect themselves.
The plaintiffs contend that Richard Smith could not set up a title averse to them, and therefore that the defendants cannot set up such title in Smith. And in support thereof gave in evidence a deed from the said Richard Smith to John Warden, Jeremiah Warden and John Head Warden, bearing date the 39th of May. 1806, in which deed he describes a tract of 348,723 3-4 acres of land, which he had surveyed, having been previously admitted a citizen of the United States, and which he had divided into lots of 1000, 5000 and other quantities of acres, for each of which he obtained separate patents. The lands lying, in the county of Russell in Virginia on Clinch river and Guests river, which flows into Clinch, and other water-courses mentioned; also other tracts of land which he had subsequently surveyed and patented; for a more particular description of which, he refers to the several patents recorded in the Virginia general land office — all of which land except as thereinafter excepted, he grants, bargains and sells and conveys to the said Wardens and their heirs. Then follows one of the exceptions in the following language: “Provided always, and expressly reserving out of this present grant and conveyance a certain tract or parcel of land con *494 taining fifty thousand acres or thereabouts, situated at or near the junction of the Clinch and Guests rivers, and bounding on each of these rivers, already sold by the said Richard Smith (to) P. Francis De Tubeuf, his heirs and assigns.” The’said patent of 10,000 acres ^claimed by the plaintiffs in this suit, must be covered by the said fifty thousand acres, which is described as “situated at or near the junction of the Clinch' and Guests rivers and bounding on each of these rivers.” (Both lie north of Clinch river.) Because the boundary of the 10,000 acre patent claimed by the plaintiffs is described as beginning at the mouth of Big Toms creek, where it empties into Guests river, at four buckeyes and maple and white walnut; thence running down Guests river along the several meanders thereof and binding on the same 1,192 poles to the mouth thereof, where it empties into Clinch river. Thence up Clinch river on the north bank thereof and along its several meanders and binding thereon, 2,786 poles to the mouth of Dick creek, where it empties into the Clinch river; thence N. 23 W. 897 poles to two white oaks standing in the line of No. 2, of 1,500 acres; then with its line and the line of Nos. 22 and 23 of five thousand acres each, to the beginning. These are all evidently some of the lots or divisions, as well as the tract of 10,000 acres, claimed by the plaintiffs in this suit, which is numbered 16, of the 348,-723 acres for which he had obtained separate patents. He adthits in solemn form, that he had sold 50.000 acres, which we see necessarily embraces the 10,000 acres now in dispute, to the elder.De Tubeuf, his heirs and assigns, which he expressly reserves from the grant and conveyance he made to the Wardens. Would not the said Richard Smith and all other persons claiming by, through or under him, by that solemn avowal and admission be forever estopped from setting up any claim against De Tubeuf and those claiming under him, to the said ten thousand acres, part of the 50,000 acres which he had acknowledged under his hand and seal he had sold to De Tubeuf, his heirs and assigns, and which he expressly reserved for him? And if so, *the said Richard Smith, his heirs and assigns, could not be held to have title to the said tract of 10,000 acres, part and parcel of the 50,000 acres, which he, by solemn acknowledgment under his hand and seal, had sold to De Tubeuf, and reserves to him, his heirs and assigns, and cannot be relied on by the defendants as an outstanding title in Richard Smith or his heirs.
But whilst it cannot be so relied on by the defendants, it may be said that still the copies of unrecorded or illegally recorded deeds cannot be given in evidence by the plaintiffs. Thatmaybeconceded;but here an obligation is shown on part of Richard Smith, by his •own acknowledgment, to convey to De Tu-beuf, his heirs or assigns, the land in dispute, if it is not an acknowledgment that he had conveyed it. But although it may not be an acknowledgment of a conveyance, and no actual conveyance has been shown, after such a lapse of time in ejectment the court would, under all the circumstances of the case, instruct the jury to presume that a conveyance had been made. And if the court should so instruct the jury in a case where the court is in the place of a jury, and discharging its functions, it ought so to presume itself. And especially when the defendants sets up no title of his own. but seeks only to defeat the plaintiff’s right by showing a better outstanding title in a third party, who himself would be estopped to claim title against the plaintiffs. Whilst we are of opinion, therefore, that the court did not err in excluding'the copies of the powers of attorney aforesaid from the evidence, upon the ground that they were not copies of valid records, we are of opinion that it did err in giving judgment for the defendants. It should have given judgment for the plaintiffs. We are of opinion, therefore, to reverse the judgment of the circuit court, and *to enter judgment for the plaintiffs for the 4,900 acres of land.
CHRISTIAN, J. concurred in the opinion of Anderson, J.
STAPLES, J. dissented.
The judgment was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the judgment aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the said circuit court erred in finding for the defendants in error instead of finding for the plaintiffs in error (except James Campbell), on the evidence certified in the record; therefore it is considered by this court that, for the error aforesaid, the said judgment of the said circuit court be reversed and annulled, and that the plaintiffs in error (except James Campbell) recover of the defendants in error their costs by them about their said writ of error here expended, except so much of said costs (to be taxed by the clerk of this court) as was occasioned by copying into the record any document more than once. And this court, proceeding now to render in the premises such judgment as the said circuit court ought to have rendered, is of opinion that the defendants (excent William M. Greer as to whom the case has not been submitted to the court) are guilty, and the plaintiffs (except James Campbell) have title in manner and form as the plaintiffs in their declaration against the defendants have complained, and that the damages to the plaintiffs (except James Campbell) by occasion thereof, be assessed at one cent, *besides their costs. ■Therefore it is considered by the court that the plaintiffs (except James Campbell) recover against the defendants (except the said Greer, asito whom, for the cause aforesaid,' no judgment can yet be given! the lands in the declaration mentioned, in fee simple, together with their damages assessed as aforesaid, and their costs by thém about their suit in this behalf expended. And the plaintiffs (with said exception) may have against the said defendants (except said *495 Greer as aforesaid) their writ of possession accordingly. Which is ordered to be certified to the said circuit court of Scott county.
Judgment reversed.